UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEDAPPROACH HOLDINGS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GREGORY D. HAWKINS and ) <br> SHARON HAWKINS, ) <br> ) <br> Defendants. ) | Case No. 3:11-cv-1199 <br> Judge Trauger |

## MEMORANDUM

Pending before the court is the Defendants' Motion to Dismiss for Failure to State a Claim (Docket No. 33), to which the plaintiff has responded (Docket No. 40), and the defendants have filed a reply (Docket No. 45). Also before the court, is the plaintiff's Motion to Amend First Amended Complaint (Docket No. 37). For the reasons discussed herein, the defendants' motion will be granted and the plaintiff's motion will be denied.

## BACKGROUND

The plaintiff, MedApproach Holdings, Inc. ("MAH"), is a Delaware corporation that is the general partner of MedApproach, L.P. ("MedApproach"), a Delaware limited partnership.[1] Both MAH and MedApproach maintain their principal place of business in Nashville, Tennessee. MedApproach has served and continues to serve as a vehicle through which investments have been made to fund a project to manufacture and distribute a controversial pharmaceutical drug

---

[1] Unless otherwise noted, the factual allegations are drawn from the plaintiff's Amended Complaint (Docket No. 26).

1

named mifepristone in the United States ("the mifepristone project"). (Docket No. 26 at 2-3; Docket No. 34 at 1.) The defendants, Gregory and Sharon Hawkins, are New York State residents who invested funds in the aforementioned project through MedApproach.

In this suit, MAH alleges that the defendants conspired to fraudulently induce it to transfer funds that they had already invested in MedApproach to other corporate entities created by Mr. Hawkins that directly invested those funds in the mifepristone project. The purpose of this alleged scheme, which involved material misrepresentations of fact by Mr. Hawkins, was to avoid paying MAH certain management and profit participation fees that otherwise attached to funds invested in the project through MedApproach. MAH also alleges that, by virtue of this scheme, the defendants breached a contractual obligation to place their investments in the mifepristone project through MedApproach.

The parties' business relationship commenced in 1995, when Bio-Pharm Investments, Inc. ("Bio-Pharm"), MAH's corporate predecessor, approached Mr. Hawkins to gauge his interest in investing in the mifepristone project through MedApproach. On May 4, 1995, Mr. Hawkins executed a letter agreement with Bio-Pharm concerning his receipt of materials to evaluate the project before making an investment decision.[2] (Docket No. 34-3.) That agreement provided,

---

[2] In support of their motion to dismiss, the defendants have attached a copy of this letter agreement. (*See* Docket No. 34-3) The court may consider this exhibit in the course of ruling on the pending motion, as it is central to MAH's allegation that the defendants breached their obligations to invest funds in the mifepristone project through MedApproach. (Docket No. 26 at 11.). *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim") (internal quotation marks and citations omitted). Moreover, the plaintiff has raised no objections to the authenticity or relevance of this attached exhibit. *See Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) ("While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed

2

among other things, that, "[i]n the event that a Transaction [i.e., an investment by Mr. Hawkins in the mifepristone project through Bio-Pharm or an entity in which it has an interest] is not consummated, neither [he nor his representatives] shall, without the prior written consent of Bio-Pharm, use any of the Evaluation Material for any purpose, or invest in Akcess [the company operating the mifepristone project] or its affiliates." (*Id.*)

On December 21, 1995, Mr. Hawkins executed a Subscription Agreement with MedApproach. Under this agreement, Mr. Hawkins agreed to invest $1 million in MedApproach as a limited partner. A second Subscription Agreement was executed by Mr. Hawkins on June 28, 1996, whereby another $500,000 was invested in the limited partnership.

As MedApproach's general partner, Bio-Pharm earned its compensation through management and profit participation fees. Specifically, it charged a 1% annual management fee and a 20% profit participation fee on all distributions made by MedApproach after the return of capital to investors. Mr. Hawkins agreed to this fee arrangement in writing.

MedApproach acquired control of the mifepristone project in 1997. In connection with this acquisition, Mr. Hawkins, along with two other investors, executed an agreement ("the Back-Stop Liability Agreement") on February 4, 1997, wherein he agreed, among other things, to pay for certain obligations undertaken by MedApproach in connection with its acquisition. Mr. Hawkins agreed to make such payments to and on behalf of MedApproach. Pursuant to the Back-Stop Liability Agreement, Mr. Hawkins paid $3.5 million to MedApproach. On February 12, 1997, Mr. Hawkins executed a Funding Commitment. An Amended and Restated Funding

---

issues of fact regarding the relevance of the document") (internal quotation marks, citations, and alterations omitted).

3

Case 3:11-cv-01199   Document 47   Filed 12/17/12   Page 3 of 17 PageID #: 639

Commitment was executed on April 30, 1998, wherein Mr. Hawkins agreed to fund MedApproach's obligations up to a total of $13,717,672.00. In a letter agreement executed on May 28, 1998, Mr. Hawkins agreed that, in the event his obligations under the Amended and Restated Funding Commitment were called upon, he would make a capital contribution to Medapproach in an amount necessary to satisfy both his and MedApproach's obligations under that commitment.

Sometime during the second-half of 1998, Mr. Hawkins suffered financial difficulties precipitated by the collapse of Long-Term Capital Management Inc. ("Long-Term"), a hedge fund of which he was the principal. After Long-Term's collapse, Mr. Hawkins is alleged to have represented being "broke," although it is unclear to whom this representation was made. By the end of the second quarter of 1998, he had invested $7.4 million in MedApproach. He is alleged to have invested only $75,000 thereafter.

On July 2, 1998, Mr. Hawkins assigned his limited partnership interests and obligations in MedApproach to his wife, Sharon Hawkins. This assignment was consented to by MedApproach through its general partner, Bio-Pharm.

The Amended Complaint alleges that Mr. Hawkins created five Delaware Limited Liability Companies that invested in the mifepristone project. One of these entities, Resurgence LLC ("Resurgence"), is wholly-owned by Mrs. Hawkins. The Amended Complaint alleges that the funds in Resurgence should have been invested in MedApproach and subject to its applicable management and profit participation fees.

As for another Delaware entity, Shiroyama, LLC ("Shiroyama"), the Amended Complaint alleges that Mr. Hawkins requested approval from MAH to transfer $320,000 of his wife's

4

investment in the limited partnership to this specific LLC.³ In making this request, Mr. Hawkins is alleged to have made the following false representations: (1) the money transferred from MedApproach into Shiroyama would not personally benefit him; (2) an outside investor in the mifepristone project wished to maintain absolute confidentiality because he was a Catholic priest; and (3) the $320,000 sum was a "sweetener" to induce a much larger investment from this outside investor. However, according to the Amended Complaint, no priest ever invested in Shiroyama and, instead, the putatively "broke" Mr. Hawkins contributed all of the funds to the LLC. It further alleges that, in the absence of these false representations, consent to the transfer would have been withheld.

MAH alleges that Mr. Hawkins made similar representations in the course of requesting transfers of varying portions of Mrs. Hawkins' MedApproach interests to the other three Delaware LLCs: Campenile, LLC ("Campenile"); River Valley, LLC ("River Valley"); and West Fork, LLC ("West Fork"). Specifically, MAH alleges that he represented that the requested transfers were sweeteners and that he was foregoing any personal interest in the transferred funds. It adds that it is reasonable to infer that these representations were false, given the circumstances surrounding Mr. Hawkins' request to transfer his wife's MedApproach interests to Shiroyama. The funds-transfers to Shiroyama, Campenile, River Valley, and West Fork were all made on June 14, 1999. MAH alleges that the purpose of Mr. Hawkins' false statements was to deprive it of its management and profit participation fees.

---

³ While the Amended Complaint alleges that the requested transfer was of Mr. Hawkins' interests, given the earlier allegation that Mr. Hawkins had previously assigned his MedApproach interests to his wife, it appears that this request addressed funds owned by Mrs. Hawkins.

5

In December of 1999, MedApproach underwent a reorganization, effective January 1, 1999. Specifically, the preexisting MedApproach entity was dissolved and its assets, liabilities, rights, and legal obligations were transferred to three new Delaware limited partnerships created in its stead: MedApproach, L.P. ("new MedApproach"); DIG Equity L.P. ("DIG Equity"); and DIG Special Assets, L.P. ("DIG Special Assets"). Both defendants are alleged to have consented to this move. In addition, MAH was formed, as the successor to Bio-Pharm, to serve as the general partner to all three of the newly created limited partnerships. MAH specifically assumed Bio-Pharm's rights, duties, and responsibilities.

According to the agreements that were executed during the reorganization, MAH was entitled to a 1% management fee, along with a 10% profit participation fee of all distributions payable to new MedApproach's limited partners after the return of capital. As for distributions payable to the limited partners of DIG Equity, the profit participation fee was 20%. After all contributed capital had been returned to each limited partner in July of 2010, MAH's accrued management fees (which had previously been deferred) and profit participation fees became due for the first time. Mr. Hawkins has allegedly continued to falsely insist that he has no interest in any of the five Delaware LLCs he created, so as to avoid paying MAH its applicable fees.

The plaintiff commenced this action on December 20, 2011 (Docket No. 1) and filed an Amended Complaint on July 6, 2012 (Docket No. 26). It asserts claims against the defendants for fraud, civil conspiracy, and breach of contract. (Docket No. 26 at 11.) The defendants filed the pending motion to dismiss on July 30, 2012.[4] (Docket No. 33.) MAH filed its response on

---

[4] On the same date, the defendants also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. (Docket No. 31.) That motion is addressed in a concurrently issued Memorandum Opinion.

6

September 21, 2012. (Docket No. 40.) On the same date, it moved for leave to amend, attaching a proposed Second Amended Complaint. (Docket No. 37.) This proposed pleading presents additional allegations pertaining to MAH's breach of contract claim.[5] (Docket No. 38 at 12-13.)

## ANALYSIS

The defendants have moved for dismissal of MAH's Amended Complaint on the ground that it fails to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

---

[5] The proposed Second Amended Complaint also attaches, as an exhibit, a letter agreement that allegedly demonstrates that Mrs. Hawkins purposefully availed herself of the forum for purposes of establishing personal jurisdiction. (Docket No. 38, Ex. A.) The court, however, has already addressed MAH's reliance on this letter agreement in its concurrent Memorandum Opinion analyzing the defendants' Rule 12(b)(2) and 12(b)(3) motions.

7

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## II. The Defendants' Motion

### A. Fraud

The defendants contend that MAH has failed to sufficiently plead a fraud claim against either of them. With respect to Mr. Hawkins, they assert that the fraud claim is deficient because it fails to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). (Docket No. 34 at 13.) Specifically, they assert that the Amended Complaint fails to allege facts regarding the time, place, and content of Mr. Hawkins' alleged fraudulent statements or facts supporting an inference that those statements were false when made. (*Id.* at 14.) As for Mrs. Hawkins, the defendants argue that the Amended Complaint fails to allege that she made any misrepresentations at all. (*Id.* at 13.) In its opposition, MAH appears to ignore the defendants' particularity argument concerning Mr. Hawkins and, instead, asserts that the Amended Complaint sufficiently alleges the elements of fraud with respect to both defendants. (Docket No. 40 at 3-6.)

#### (1) Gregory Hawkins

Under Federal Rule of Civil Procedure 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The purpose of this rule "is to alert defendants as to the particulars of their alleged misconduct so that they may respond[,] . . . to prevent fishing expeditions, to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466-67 (6th Cir. 2011) (internal quotation marks and citations omitted). To satisfy Rule 9(b)'s particularity requirement, "the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Id.* at 467. (internal quotation marks omitted).

Having examined the allegations of the Amended Complaint, the court finds that the plaintiff has failed to plead fraud with the requisite particularity. The crux of the Amended Complaint's fraud allegation with respect to Mr. Hawkins is that he made material misrepresentations of fact to induce MAH to transfer his wife's interests in MedApproach to four Delaware LLCs he formed, which, in turn, directly invested those funds in the mifepristone project. The purpose of this alleged fraudulent scheme was to avoid paying MAH its management and profit participation fees that otherwise attached to funds invested in the project through MedApproach. The Amended Complaint alleges that, in the absence of these alleged misrepresentations, MAH would not have given its consent to the requested transfers.

Most of the alleged misrepresentations made by Mr. Hawkins in furtherance of this fraudulent scheme pertain to his request to transfer $320,000 of his MedApproach investment to Shiroyama. In making this request, Mr. Hawkins is alleged to have represented to MedApproach that he would not personally benefit from the transferred funds, that the requested funds were a sweetener to induce a much larger investment in the mifepristone project from an outside

9

investor, and that this investor was a Catholic priest who sought to keep his identity confidential. The Amended Complaint alleges that these representations were false, as Shiroyama received no investments from a priest, but, instead, received all of its funding from Mr. Hawkins, who caused Shiroyama to directly invest the transferred funds in the mifepristone project. Thus, the Amended Complaint alleges that these misrepresentations, upon which MAH detrimentally relied, were made as part of a fraudulent scheme to induce MAH to relinquish funds to which its management and profit participation fees would otherwise attach. However, it fails to allege when and where these alleged misrepresentations were made. Moreover, while the Amended Complaint alleges that Mr. Hawkins made the alleged misrepresentations to MAH, it fails to specifically identify the individual to whom the alleged false statements were directed.[6]

The Amended Complaint alleges that Mr. Hawkins made similar representations in connection with his request to transfer varying portions of Mrs. Hawkins' MedApproach interests to Campenile, River Valley, and West Fork. Indeed, it alleges that Mr. Hawkins represented that the requested transfers were sweeteners to induce others to invest in the mifepristone project through these particular LLCs and that he was foregoing any personal interest in the transferred funds. Again, while the Amended Complaint alleges that MAH detrimentally relied on these representations, purportedly made in furtherance of Mr. Hawkins' fraudulent scheme to avoid paying management and profit participation fees, it omits any allegations concerning the time,

---

[6] The court acknowledges that MAH provided additional details concerning where, and to whom, Mr. Hawkins directed his alleged misrepresentations in the Affidavit of W. Bradley Daniel ("the Daniel Affidavit"), which it filed in support of its opposition to the defendants' Rule 12(b)(2) and 12(b)(3) motions to dismiss. (*See* Docket No. 39 ¶ 19.) Nonetheless, the court is precluded from relying upon Mr. Daniel's affidavit for purposes of resolving the pending motion brought under Rule 12(b)(6), as it is not a part of the pleadings. *See Weiner*, 108 F.3d at 88 (noting that, generally, "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss").

place, or recipient of these alleged representations. In addition, it fails to set forth why these representations were false. Instead, the Amended Complaint only alleges that it is reasonable to infer that these representations were false based on the circumstances surrounding Mr. Hawkins' request to transfer his wife's MedApproach interests to Shiroyama.

As to Mr. Hawkins' representation that he was "broke" following the collapse of Long Term Capital, the Amended Complaint similarly fails to specify the time, place, or recipient of the alleged representation. Moreover, although the Amended Complaint alleges that Mr. Hawkins actually had sufficient liquidity, as he later invested his own funds into Shiroyama at some unspecified date, it fails to clearly allege whether he made false statements about his financial condition in furtherance of the fraudulent scheme to induce MAH to consent to the requested transfers of funds to Shiroyama, Campenile, River Valley, and West Fork

The Amended Complaint also alleges that, in 2010, Mr. Hawkins continued to falsely insist that he had no personal interest in any of the five Delaware LLCs he created. It adds that he intentionally made this statement to deceive MAH, and to deprive it of the fees that it was otherwise entitled to. What the Amended Complaint lacks, however, is a description of where and to whom Mr. Hawkins made this alleged misrepresentation.

Accordingly, because the Amended Complaint fails to plead fraud against Mr. Hawkins with the requisite particularity required under Rule 9(b), the court will grant the defendants' motion to dismiss this particular claim.

### (2) Sharon Hawkins

The Amended Complaint also fails to state a fraud claim against Mrs. Hawkins. As the defendants rightly point out, it is devoid of any allegation that Mrs. Hawkins made a single

misrepresentation, which is a critical element of a fraud claim. *See Hodge v. Craig*, No. M2009-00930-SC-R11-CV -- S.W.3d – , 2012 WL 4486315, at *12 (Tenn. Oct. 1, 2012) (noting that "'intentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are different names for the same cause of action"). MAH's attempt, in its opposition brief, to hold Mrs. Hawkins liable under an agency theory is similarly unavailing. Despite its *post hoc* efforts to assert an agency relationship between Mr. and Mrs. Hawkins, there are simply no factual allegations in the Amended Complaint from which this court can reasonably infer such an arrangement.[7] Indeed, the Amended Complaint fails to even mention the term agency, let alone set forth that Mr. Hawkins was authorized to act on his wife's behalf and operated within the scope of that authority in making the alleged misrepresentations. MAH cannot back-fill its Amended Complaint by raising previously absent theories of liability in its brief opposing the defendants' Rule 12(b)(6) motion.[8] Accordingly, the defendants' motion to dismiss the fraud claim against Mrs. Hawkins will similarly be granted.

### B. Civil Conspiracy

A civil conspiracy requires "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-*

---

[7] While MAH provided details concerning the existence of an agency relationship between Mr. and Mrs. Hawkins in the Daniel Affidavit (*see* Docket No. 39 ¶¶ 24-25), the court reiterates that it is precluded from relying upon this document in resolving the pending motion, since it not a part of the pleadings. *See Weiner*, 108 F.3d at 88.

[8] MAH also raises the concepts of fraudulent conveyance and joint venture in its opposition brief, although it admits that those theories do not appear to squarely fit the facts of the instant case. (Docket No. 40 at 10.) In any event, the Amended Complaint fails to contain allegations identifying either of those theories.

*Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). Stated differently, the elements of a civil conspiracy claim are: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). However, participation in a civil conspiracy is not, by itself, an actionable tort. *Stanfill v. Hardney*, No. M2004-02768-COA-R3-CV, 2007 WL 2827498, at *7 (Tenn. Ct. App. Sept. 27, 2007). Rather, a civil conspiracy claim requires "the existence of an underlying tort or wrongful act committed by one or more of the conspirators in furtherance of the conspiracy." *Id.* *(citing Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994); *Tenn. Publ'g Co. v. Fitzhugh*, 52 S.W.2d 157, 158 (Tenn. 1932); *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004)). If a conspiracy is found, "each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme. *Trau-Med*, 71 S.W.3d at 703.

The defendants argue that dismissal of this claim is warranted because MAH has neither specifically pled any of the elements comprising a civil conspiracy, nor alleged facts that could reasonably support such a claim. (Docket No. 34 at 17-18.) The court agrees. The Amended Complaint's civil conspiracy count contains a single conclusory paragraph stating that the "[d]efendants have acted jointly and severally to impair or defeat the claims of the [p]laintiff to its justly-owed management and participation fees through false, fraudulent, misleading, and deceptive practices." This allegation is plainly insufficient to state a civil conspiracy claim. Indeed, the Amended Complaint lacks any factual allegations from which the court can reasonably infer that Mr. and Mrs. Hawkins either expressly or impliedly agreed to work in

13

concert to fraudulently deprive MAH of its management and profit participation fees. Moreover, given the court's findings regarding MAH's fraud claims, no underlying tort exists from which liability could arise. For all of these reasons, the defendants' motion to dismiss this claim will be granted.

## C. Breach of Contract

The defendants have also moved to dismiss MAH's breach of contract claim. (Docket No. 34 at 5.) Specifically, they contend that MAH has failed to identify any written agreement wherein Mr. Hawkins agreed to only invest funds in the mifepristone project through MedApproach. (Docket No. 34 at 5.) They also argue that, even if such a contractual obligation existed, MAH cannot establish that Mr. Hawkins committed a breach. (*Id.* at 6, 10.) The defendants also assert that MAH has failed to identify any agreement wherein Mrs. Hawkins contractually obligated herself to exclusively invest in the mifepristone project through MedApproach. (*Id.* at 11-12.)

In its response, MAH appears to rely upon an implied contractual theory in advancing its breach of contract claim. (Docket No. 40 at 2, 11-15.) Specifically, it asserts that a contractual relationship between itself and the defendants can be inferred from the circumstances surrounding the defendants' investment relationship with MedApproach. (*Id.* at 2, 13-15.) To support its argument, it relies on the allegations contained in the proposed Second Amended Complaint's breach of contract count. (Docket No. 38 at 12-13.)

The defendants reply that neither MAH's response nor its proposed Second Amended Complaint rehabilitates its deficient breach of contract claim. (Docket No. 34 at 5.) They insist that MAH has failed to point to an express contractual undertaking by either defendant to

14

exclusively invest in the mifepristone project through MedApproach. (*Id.* at 5-6.) They add that the factual allegations contained in the proposed Second Amended Complaint fail to support MAH's assertion that an implied contract can be inferred from the parties' course of dealing. (*Id.*)

To state a viable claim for breach of contract under Tennessee law, the plaintiff must establish the following three essential elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of that contract; and (3) damages caused by the breach of contract. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). A contract implied in fact arises from circumstances showing a mutual intent or assent to contract. *Jones v. LeMoyne-Owen College*, 308 S.W.3d 894, 905 (Tenn. Ct. App. 2009). Unlike an express contract, where "the parties assent to the terms of the contract by means of words, writings, or some other mode of expression[,]" in a contract implied in fact, mutual assent to the contract's terms is shown by the parties' conduct and the surrounding circumstances. *Id.* at 905-06 (internal quotation marks and citations omitted).

In its proposed Second Amended Complaint, MAH appears to allege that Mr. Hawkins' agreement to exclusively invest in the mifepristone project through MedApproach can be inferred from the following circumstances: (1) Mr. Hawkins executed a letter agreement with Bio-Pharm, MAH's corporate predecessor, on May 4, 1995; (2) following the execution of that agreement, Mr. Hawkins entered into a limited partnership agreement with MedApproach, wherein he agreed that any investments into or withdrawals out of the partnership required the consent of the general partner (at the time, Bio-Pharm); and (3) that the defendants subsequently did not invest funds in the mifepristone project through any other avenue until Mr. Hawkins

sought permission to transfer some of his wife's MedApproach interests to four of the Delaware LLCs: Shiroyama, Campenile, River Valley, and West Fork. (Docket No. 38 at 12.) Viewing these allegations together, and in the light most favorable to MAH, the court does not believe that they support the existence of an implied exclusivity contract.

At the outset, the defendants accurately point out that Mr. Hawkins' obligation in the May 4, 1995 letter agreement to seek Bio-Pharm's written consent prior to investing in the mifepristone project was expressly conditioned upon Mr. Hawkins *not investing* in the project through Bio-Pharm, or an entity in which it had an interest. However, because Mr. Hawkins did, in fact, agree to invest in the project through MedApproach, the purported non-circumvention obligation never arose. Next, the court fails to see how Mr. Hawkins' limited partnership obligation to obtain the general partner's consent before investing funds into or withdrawing funds out of MedApproach, reasonably exhibited a "meeting of the minds" between himself and MAH concerning a separate, more expansive, obligation for Mr. Hawkins to exclusively invest all of his funds in the mifepristone project through MedApproach. It similarly fails to see how Mr. Hawkins' request to obtain such consent to transfer a portion of his wife's funds (which, up to that point, had been invested in the project solely through MedApproach) out of the partnership and into four of the Delaware LLCs evidences his assent to an exclusivity contract with MAH.

In sum, MAH has failed to set forth circumstances from which this court can reasonably infer that Mr. Hawkins and MAH impliedly agreed to a contract requiring him to exclusively invest all of his funds in the mifepristone project through MedApproach. Moreover, given its discussion above, the court similarly finds that the proposed Second Amended Complaint fails to

16

allege that Mrs. Hawkins, who is alleged to be in privity of contract with Mr. Hawkins, presumably as the assignee of his MedApproach interests and obligations (Docket No. 38 at 6, 12-13), was similarly bound under an implied exclusivity contract. Accordingly, MAH's motion to amend will be denied as futile, and its breach of contract claim will be dismissed. *See Midkif v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) ("A motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss") (internal quotation marks and citations omitted).

### III. Going Forward

In light of the foregoing, the court will grant the defendants' motion and dismiss each of MAH's claims asserted against them. However, the dismissal of these claims will be without prejudice. MAH shall be given until January 14, 2012 to file a motion for leave to amend its Amended Complaint or to otherwise move for an extension of this deadline upon a showing of good cause. If neither motion is filed by the aforementioned deadline, the court will enter a final judgment in this case dismissing the plaintiff's claims with prejudice.

### CONCLUSION

For all of the reasons discussed herein, the Defendants' Motion to Dismiss for Failure to State a Claim (Docket No. 33) will be **GRANTED** and the plaintiff's Motion to Amend First Amended Complaint (Docket No. 37) will be **DENIED**.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge