IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEDAPPROACH HOLDINGS, INC.<br><br>Plaintiff,<br><br>v.<br><br>GREGORY D. HAWKINS AND<br>SHARON HAWKINS<br><br>Defendants. | Civ. No. 3-11-1199<br><br><br>DEFENDANTS' STATEMENT OF<br>UNDISPUTED MATERIAL FACTS |

Pursuant to Local Rule 56.01(b), Gregory D. Hawkins and Sharon Hawkins (together, "Defendants") respectfully submit this concise statement of the material facts as to which they contend there is no genuine issue for trial.

1.  In 1998, Greg Hawkins, an investor in what is known in this litigation as the Project, committed to provide funding to re-purchase investments in the Project associated with a rescission offering scheduled to close in June 1999. (G. Hawkins Decl. ¶ 3.)

    **RESPONSE:**

2.  By late 1998, Greg Hawkins informed Brad Daniel that the funds to re-purchase the investments referenced in Statement #1 and to fund other Project obligations would need to come from third parties, in light of Mr. Hawkins' liquidity challenges. (G. Hawkins Decl. ¶ 4.)

    **RESPONSE:**

3. In the same late 1998 timeframe, Brad Daniel consented to Mr. Hawkins' plan, outlined to Statement #2, that the funding to re-purchase the investments and fund certain other obligations would come from third party investors, not Mr. Hawkins. (G. Hawkins Decl. ¶ 4.)

**RESPONSE:**

4. In order to attract the new third party investors referenced in Statement #3, Greg Hawkins ultimately decided he needed to provide those investors with a "sweetener" of additional funds. (G. Hawkins Decl. ¶ 5.)

**RESPONSE:**

5. The "sweetener" funds referenced in Statement #4 were paid to the third party investors out of the Hawkins' existing investment (approximately $3,000,000) in Danco Investors Group, L.P., which was held in an entity called DIG Special Assets, L.P. (G. Hawkins Decl. ¶ 5-6.)

**RESPONSE:**

6. In the course of this effort to attract third party investors to fund the rescission offering and other Project obligations, Mr. Hawkins successfully persuaded several friends to invest approximately $4,000,000 of their own funds in the Project. (G. Hawkins Decl. ¶ 5.)

**RESPONSE:**

7. Each of the third party investors referenced in Statement #6 was paid a sweetener -- a pro rata share of the Hawkins' $3,000,000 existing investment in the Project, which was held by DIG Special Assets, L.P. (G. Hawkins Decl. ¶ 5-6.)

**RESPONSE:**

8. Brad Daniel explicitly agreed to each of the sweeteners referenced in Statement #7 being paid to the third party investors referenced in Statement #7. (G. Hawkins Decl. ¶ 6.)

**RESPONSE:**

9. Greg Hawkins and James McEntee had many conversations about Mr. McEntee becoming a third party investor in the Project during this late 1998/1999 timeframe. (G. Hawkins Decl. ¶ 7; McEntee Decl.)

**RESPONSE:**

10. In the Spring 1999 timeframe, Mr. Hawkins identified a special purpose vehicle, known as the Shiroyama LLC entity, through which Mr. Hawkins envisioned that Mr. McEntee would invest in the Project. (G. Hawkins Decl. ¶ 7.)

**RESPONSE**:

11. Consistent with the conversations and plans discussed in Statements 9-10, on May 2, 1999, Mr. Hawkins wrote a letter to Mr. McEntee's attorney discussing the potential terms of Mr. McEntee's investment in the Project. (G. Hawkins Decl. ¶ 7; G. Hawkins Decl. Ex. B.)

**RESPONSE**:

12. Mr. Daniel and Mr. Hawkins had discussions about a "sweetener" for the Shiroyama investor that occurred prior to the due date for the investment in 1999. (G. Hawkins Decl. ¶ 9-11.)

**RESPONSE:**

13. In the course of the conversations mentioned in Statement #12, Brad Daniel agreed to provide the "sweetener" funds -- $320,000 – for the Shiroyama investor out of the Hawkins' investment funds held in DIG Special Assets, L.P. and indeed provided that money. (G. Hawkins Decl. ¶ 9.)

**RESPONSE:**

14. Because Mr. McEntee had not committed to investing in the Project by the

funding closing date in 1999, Mr. Hawkins advanced the $350,000 that he had planned that Mr. McEntee would invest. (G. Hawkins Decl. ¶ 9.)

**RESPONSE:**

14. Mr. Hawkins and Mr. McEntee continued their discussion about a potential investment in the Project through 1999, continuing to discuss the issue after the date the investment would have been due. (G. Hawkins Decl. ¶ 8.)

**RESPONSE:**

15. Until the day in late 1999/early 2000 when Mr. McEntee informed Mr. Hawkins he would not invest in the Project, Mr. Hawkins believed that Mr. McEntee would ultimately invest in the Project. (G. Hawkins Decl. ¶ 8, 12; McEntee Decl. ¶ 2.)

**RESPONSE:**

16. Sharon Hawkins had no knowledge of nor participation in any of the conversations or negotiations discussed herein between Mr. Hawkins and Mr. Daniel or Mr. Hawkins and Mr. McEntee. (S. Hawkins Decl.; G. Hawkins Decl. ¶ 13.)

**RESPONSE:**

Respectfully submitted,

**NEAL & HARWELL, PLC**

By: /s/ William T. Ramsey
William T. Ramsey, #009245
2000 One Nashville Place
150 Fourth Avenue North
Nashville, Tennessee 37219
(615) 244-1713 – Telephone
(615) 726-0573 – Facsimile
wramsey@nealharwell.com

and

**LOWENSTEIN SANDLER LLP**

By: /s/ R. Scott Thompson
R. Scott Thompson
(NY Bar No. 041361986)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2532
Fax: (973) 597-2533
sthompson@lowenstein.com

April 15, 2014                     *COUNSEL FOR DEFENDANTS*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 15, 2014 a true and correct copy of the foregoing document and was served upon the following via the Court's electronic filing system:

Robert Earl Boston
Ames Davis
Waller, Lansden, Dortch & Davis, LLP (Nashville)
Nashville City Center
511 Union Street
Suite 2700
Nashville, TN 37219
(615) 244-6380
Email: bboston@wallerlaw.com
Email: ames.davis@wallerlaw.com

                                            /s/ William T. Ramsey