IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEDAPPROACH HOLDINGS, INC., | ) |
| Plaintiff, | ) Case No. 3:11-cv-1199 |
| | ) Judge Trauger |
| v. | ) |
| GREGORY D. HAWKINS and SHARON HAWKINS, | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.01(c), MedApproach Holdings, Inc. ("Plaintiff") respectfully submits this response to Defendants' Statement of Material Facts (Docket No. 92).

1. In 1998, Greg Hawkins, an investor in what is known in this litigation as the Project, committed to provide funding to re-purchase investments in the Project associated with a rescission offering scheduled to close in June 1999. (G. Hawkins Decl. ¶ 3.)

**RESPONSE: Undisputed for the purpose of ruling on the motion for summary judgment only that Greg Hawkins committed to provide funding to re-purchase investments in the Project, but disputed that it was in 1998. Mr. Hawkins actually agreed to provide funding in 1997. Daniel 2012 Affidavit, D.E. 39, p. 3, ¶10.**

1

11815377.4

2. By late 1998, Greg Hawkins informed Brad Daniel that the funds to re-purchase the investments referenced in Statement #1 and to fund other Project obligations would need to come from third parties, in light of Mr. Hawkins' liquidity challenges. (G. Hawkins Decl. ¶ 4.)

**RESPONSE: Disputed. Greg Hawkins informed Brad Daniel that he was "broke" and did not have the funds to commit to the Project as he had previously agreed. Mr. Hawkins informed Mr. Daniel that he sought out another investor to help fund the Project who was a priest, and that the priest committed to help fund the Project. Daniel Declaration, filed herewith, p. 2, ¶8.**

3. In the same late 1998 timeframe, Brad Daniel consented to Mr. Hawkins' plan, outlined to Statement #2, that the funding to re-purchase the investments and fund certain other obligations would come from third party investors, not Mr. Hawkins. (G. Hawkins Decl. ¶ 4.)

**RESPONSE: Disputed as stated. It is undisputed for the purpose of ruling on the motion for summary judgment only that Mr. Daniel consented to Mr. Hawkins' finding third parties to fund the Project, but it is disputed that Mr. Daniel ever agreed that Mr. Hawkins was not responsible to fund the Project to the extent it is implied. Hawkins 2012 Certification, Docket No. 32-5, p. 7, ¶18.**

4. In order to attract the new third party investors referenced in Statement #3, Greg Hawkins ultimately decided he needed to provide those investors with a "sweetener" of additional funds. (G. Hawkins Decl. ¶ 5.)

**RESPONSE: Undisputed for the purpose of ruling on the motion for summary judgment only.**

5. The "sweetener" funds referenced in Statement #4 were paid to the third party investors out of the Hawkins' existing investment (approximately $3,000,000) in Danco Investors Group, L.P., which was held in an entity called DIG Special Assets, L.P. (G. Hawkins Decl. ¶ 5-6.)

**RESPONSE: It is undisputed that the "sweetener" funds referenced in Statement #4 were paid to the third party investors out of the Hawkins' existing investment in Danco Investors Group, L.P., but disputed that it was held in DIG Special Assets, L.P. It was held in MedApproach, LP. Daniel 2012 Affidavit, Docket No. 39, p. 6, ¶19.**

6. In the course of this effort to attract third party investors to fund the rescission offering and other Project obligations, Mr. Hawkins successfully persuaded several friends to invest approximately $4,000,000 of their own funds in the Project. (G. Hawkins Decl. ¶ 5.)

**RESPONSE: Disputed. At least one of the investors who Mr. Hawkins said had committed to funding the Project, had in fact, not committed to such funding. McEntee Affidavit, p. 1, ¶2 (stating that he "did not commit to an investment").**

7. Each of the third party investors referenced in Statement #6 was paid a sweetener -- a pro rata share of the Hawkins' $3,000,000 existing investment in the Project, which was held by DIG Special Assets, L.P. (G. Hawkins Decl. ¶ 5-6.)

**RESPONSE: It is undisputed for the purposes of summary judgment that the third party investors were paid a pro rata share of the Hawkins' $3,000,000 investment in the**

**Project, but it is disputed that it was held by DIG Special Assets, L.P. It was held in MedApproach, LP. Daniel 2012 Affidavit, Docket No. 39, p. 6, ¶19.**

8. Brad Daniel explicitly agreed to each of the sweeteners referenced in Statement #7 being paid to the third party investors referenced in Statement #7. (G. Hawkins Decl. ¶ 6.)

**RESPONSE: Undisputed for the purpose of ruling on the motion for summary judgment only.**

9. Greg Hawkins and James McEntee had many conversations about Mr. McEntee becoming a third party investor in the Project during this late 1998/1999 timeframe. (G. Hawkins Decl. ¶ 7; McEntee Decl.)

**RESPONSE: Undisputed for the purpose of ruling on the motion for summary judgment only.**

10. In the Spring 1999 timeframe, Mr. Hawkins identified a special purpose vehicle, known as the Shiroyama LLC entity, through which Mr. Hawkins envisioned that Mr. McEntee would invest in the Project. (G. Hawkins Decl. ¶ 7.)

**RESPONSE: Disputed. The facts in the record establish that Mr. Hawkins made false representations regarding third parties investing in the Project. Mr. Hawkins stated that he was insolvent (Daniel 2012 Affidavit, Docket No. 39, ¶ 14), but he has since admitted that he put his own funds into Shiroyama (Hawkins Declaration, Docket No. 91-1, ¶9). Mr. Hawkins said that the person who had agreed to make the investment in Shiroyama, LLC was a priest who wanted to shield his identity (Daniel 2012 Affidavit,**

4

11815377.4
Case 3:11-cv-01199 Document 94 Filed 05/06/14 Page 4 of 13 PageID #: 1056

**Docket No. 39, ¶ 19). However, Mr. Hawkins has now admitted that the investor was not a priest at all (Hawkins Declaration, Docket No. 91-1, ¶11), but a Mr. McEntee, and Mr. McEntee states in his Declaration submitted April 15, 2014, that he never committed or agreed to make any investment in Shiroyama. McEntee Declaration, Docket No. 91-4, p. 1, ¶2. Mr. Hawkins also stated that he and his wife would not have any interest in Shiroyama, LLC (Daniel 2012 Affidavit, Docket No. 39, ¶20), but he has since admitted that they do have an interest in Shiroyama (Hawkins Declaration, Docket No. 91-1, ¶9).**

11. Consistent with the conversations and plans discussed in Statements 9-10, on May 2, 1999, Mr. Hawkins wrote a letter to Mr. McEntee's attorney discussing the potential terms of Mr. McEntee's investment in the Project. (G. Hawkins Decl. ¶ 7; G. Hawkins Decl. Ex. B.)

**RESPONSE: Disputed. The letter attached to Hawkins' Declaration is not consistent with statements in paragraphs 9 and 10 above. Hawkins Declaration, Ex. B.**

12. Mr. Daniel and Mr. Hawkins had discussions about a "sweetener" for the Shiroyama investor that occurred prior to the due date for the investment in 1999. (G. Hawkins Decl. ¶ 9-11.)

**RESPONSE: Undisputed for purpose of ruling on the motion for summary judgment only.**

13. In the course of the conversations mentioned in Statement #12, Brad Daniel agreed to provide the "sweetener" funds -- $320,000 – for the Shiroyama investor out of the

5

Hawkins' investment funds held in DIG Special Assets, L.P. and indeed provided that money. (G. Hawkins Decl. ¶ 9.)

**RESPONSE: Disputed as stated. Brad Daniel agreed to the transfer of funds as a "sweetener" based upon the statements of Mr. Hawkins that he was broke and could not meet his obligations to fund the Project; that Mr. Hawkins actually had an investor who was committed to, and had actually agreed to invest in Shiroyama, LLC, and that Mr. Hawkins and his wife would not have an interest in Shiroyama, LLC, and that he nor his wife would fund Shiroyama, LLC. Daniel Declaration, submitted herewith, ¶¶5-8. It is also disputed that the Hawkins' investment funds were held in DIG Special Assets, L.P. They were held in MedApproach, LP. Daniel 2012 Affidavit, Docket No. 39, p. 6, ¶19.**

14. Because Mr. McEntee had not committed to investing in the Project by the funding closing date in 1999, Mr. Hawkins advanced the $350,000 that he had planned that Mr. McEntee would invest. (G. Hawkins Decl. ¶ 9.)

**RESPONSE: It is undisputed for the purpose of ruling on the motion for summary judgment only that Mr. Hawkins advanced some amount of funds. It is also undisputed that Mr. McEntee had ever agreed or committed to invest in the project. However, the facts in the record establish that Mr. Hawkins made a series of false representations regarding his and his spouse's status, being broke, and third parties investing in the Project. Mr. Hawkins stated that he was insolvent (Daniel 2012 Affidavit, Docket No. 39, ¶ 14), but he has since admitted that he put his own funds into Shiroyama as well as Resurgence (Hawkins Declaration, Docket No. 91-1, ¶9; Hawkins Certification, Docket No. 32-5, ¶21). Mr. Hawkins said that the investor who had agreed and was committed to**

invest in Shiroyama, LLC was a priest who wanted to shield his identity (Daniel 2012 Affidavit, Docket No. 39, ¶ 19). However, Mr. Hawkins has now admitted that the investor was not a priest (Hawkins Declaration, Docket No. 91-1, ¶11), and contrary to his representations to Mr. Daniel and to this Court that he had an investor who was committed to and had agreed to make the investment in Shiroyama (Daniel Declaration, submitted herewith, ¶10; Hawkins 2012 Certification, Docket No. 32-5, ¶ 20). Mr. Hawkins also stated that he and his wife would not have any interest in Shiroyama, LLC (Daniel 2012 Affidavit, Docket No. 39, ¶20), but he has since admitted that they do have an interest in Shiroyama (Hawkins Declaration, Docket No. 91-1, ¶9).

14. Mr. Hawkins and Mr. McEntee continued their discussion about a potential investment in the Project through 1999, continuing to discuss the issue after the date the investment would have been due. (G. Hawkins Decl. ¶ 8.)

**RESPONSE: Disputed.** Mr. Hawkins stated that he was insolvent and, therefore, needed to find other investors to invest in the Project (Daniel 2012 Affidavit, Docket No. 39, ¶ 14). Mr. Hawkins said that he was establishing Shiroyama, LLC because he had secured a commitment from an investor was a priest who wanted to shield his identity (Daniel 2012 Affidavit, Docket No. 39, ¶ 19). Mr. Hawkins also represented to Mr. Daniel that the priest had committed to and agreed to invest in Shiroyama. (Daniel Declaration, submitted herewith, ¶10; Hawkins 2012 Certification, Docket No. 32-5, ¶20). Mr. Hawkins also stated that he and his wife would not have any interest in Shiroyama, LLC (Daniel 2012 Affidavit, Docket No. 39, ¶20).

7

15. Until the day in late 1999/early 2000 when Mr. McEntee informed Mr. Hawkins he would not invest in the Project, Mr. Hawkins believed that Mr. McEntee would ultimately invest in the Project. (G. Hawkins Decl. ¶ 8, 12; McEntee Decl. ¶ 2.)

**RESPONSE: Disputed. The facts in the record establish that Mr. Hawkins made false representations at several times during this part of the history of the Project regarding third parties investing in the Project. Mr. Hawkins stated that he was insolvent (Daniel 2012 Affidavit, Docket No. 39, ¶ 14), but he has since admitted that he put his own funds into Shiroyama (Hawkins Declaration, Docket No. 91-1, ¶9). Mr. Hawkins said that he was establishing Shiroyama, LLC because the investor was a priest who wanted to shield his identity (Daniel 2012 Affidavit, Docket No. 39, ¶ 19). However, Mr. Hawkins has now admitted that the investor was not a priest (Hawkins Declaration, Docket No. 91-1, ¶11). Mr. Hawkins also stated that he and his wife would not have any interest in Shiroyama, LLC (Daniel 2012 Affidavit, Docket No. 39, ¶20), but he has since admitted that they do have an interest in Shiroyama (Hawkins Declaration, Docket No. 91-1, ¶9). Mr. Hawkins represented to Mr. Daniel that the priest was committed and had agreed to make an investment in Shiroyama, LLC (Daniel Declaration, submitted herewith, ¶ 10), which is what he also represented to this Court (Hawkins 2012 Certification, Docket No. 32-5, ¶ 20).**

16. Sharon Hawkins had no knowledge of nor participation in any of the conversations or negotiations discussed herein between Mr. Hawkins and Mr. Daniel or Mr. Hawkins and Mr. McEntee. (S. Hawkins Decl.; G. Hawkins Decl. ¶ 13.)

**RESPONSE:** Disputed. The evidence in the record reflects that Mrs. Hawkins was heavily involved with the Project and that the interests at issue were her interests. Mr. Hawkins assigned his interests in MedApproach, L.P. to Mrs. Hawkins, and she became a limited partner in MedApproach, L.P. Daniel 2012 Affidavit, Docket No. 39, p. 4, ¶¶11-12. Subsequently, the company was reorganized, and Mrs. Hawkins consented in writing to the reorganization and participated as a limited partner. Daniel 2012 Affidavit, Docket No. 39, p. 6 and 8, ¶16 and ¶22. All K-1 tax forms were provided to Mrs. Hawkins. Daniel 2012 Affidavit, Docket No. 39, p. 6, ¶17. Checks and wire transfers have been provided to and accepted by Mrs. Hawkins. Daniel 2012 Affidavit, Docket No. 39, p. 10, ¶ 24. At various points over the course of time, Plaintiff directly discussed the business with Mrs. Hawkins both in person and in writing. Daniel 2012 Affidavit, Docket No. 39, p. 6 and 9, ¶16 and ¶24; *see also* Exhibits A through D to Daniel 2012 Affidavit, Docket Nos. 39-1, 39-2, 39-3 and 39-4 (reflecting written communications between Plaintiff and Mrs. Hawkins). Ultimately, the interests that were transferred to Shiroyama, LLC were those held by Mrs. Hawkins.

## STATEMENT OF ADDITIONAL DISPUTED FACTS

1. Mr. Hawkins stated that although he committed and agreed to certain funding obligations with respect to the Project, he was broke and, therefore, could not provide the funding and needed to find other investors to fund the Project. Daniel Affidavit, ¶ 14.

**RESPONSE:**

2. Mr. Hawkins told Plaintiff he needed to transfer his interests into Shiroyama, LLC to induce other investors into the project and that the transferred investments would not inure to his or Mrs. Hawkins' benefit. Hawkins Certification, p. 7 ¶19; Daniel Affidavit, p. 10, ¶ 25.

**RESPONSE:**

3. Mr. Hawkins advised Mr. Daniels that he secured a new investor that committed and agreed to fund the Project, and that investor was a priest. Daniel Affidavit, ¶19. Hawkins statements were false as the putative new investor was not a priest, and he never committed to funding the Project. McEntee Declaration, ¶2.

**RESPONSE:**

4. Mr. Daniel relied on those statements in paragraphs 1-3 above in assenting to the movement of the Hawkins' interests, thereby foregoing the fees to which it was entitled. Daniel Affidavit, p. 7, ¶20.

**RESPONSE:**

10
11815377.4
Case 3:11-cv-01199   Document 94   Filed 05/06/14   Page 10 of 13 PageID #: 1062

5. Mr. Daniel would not have agreed to the transfer had he known that the Hawkins had an interest in Shiroyama, LLC and that they funded Shiroyama, LLC. Daniel Declaration, p. 3, ¶10.

**RESPONSE:**


6. No other investor ever put money into Shiroyama, LLC and all of the funds in Shiroyama, LLC were those of Defendants. Daniel Affidavit, p. 10, ¶25; Hawkins Certification, p. 8, ¶20.

**RESPONSE:**


7. When Mr. Daniel asked Mr. Hawkins if he or Mrs. Hawkins had any interest in Shiroyama, LLC, Mr. Hawkins stated that they did not. Daniel Declaration, p. 2, ¶6. Mr. Hawkins also refused to provide any details with respect to the identity of the investor other than stating he was a priest. Daniel Declaration, p. 2, ¶7.

**RESPONSE:**

11

8. As the General Partner of MedApproach, L.P., Brad Daniels had the sole ability to approve or deny transferring the Hawkins' interests from MedApproach, L.P. to Shiroyama, LLC. Daniel Declaration, p. 2-3, ¶10. The only reason Mr. Daniels assented to the transfer of funds was because of Mr. Hawkins' representations, which turned out to be false. *Id*.

**RESPONSE:**

Respectfully submitted,

/s Robert E. Boston
Robert E. Boston (TN Bar # 9744)
Ames Davis (TN Bar # 3826)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
(615) 244-6380
Fax: (615) 244-6804
Email: bob.boston@wallerlaw.com
ames.davis@wallerlaw.com

Attorneys for Plaintiff MedApproach Holdings, Inc.

## CERTIFICATE OF SERVICE

I certify that on May 6, 2014, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF and served via the Court's Electronic Filing System upon the following:

R. Scott Thompson
Bernard J. Cooney
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, New Jersey 07068

William T. Ramsey
Neal Harwell PLC
2000 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219

William Gary Blackburn
The Blackburn Firm, PLLC
213 Fifth Avenue North, Suite 300
Nashville, TN 37219

/s Robert E. Boston